UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANTOS MARTINEZ RAMOS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 19-cv-00014 (RJL) |
| JUSTIN'S CAFÉ, LLC, et al., | ) |
| Defendants. | ) |

FILED
APR 16 2020
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**

April 15th, 2020 [Dkt. #14]

Plaintiff Santos Martinez Ramos alleges that defendant Allison Kays, the general manager at Justin's Café, failed to pay him overtime wages during his five years working there as a dishwasher and food preparer. Despite having been served with the complaint and summons in January 2019, defendant Kays never appeared in this action. Before the Court is plaintiff's Motion for Default Judgment [Dkt. #14]. Upon consideration of the Motion, pleadings, relevant law, and the entire record herein, the Court will GRANT the motion and enter default judgment of $60,560.88 in favor of plaintiff.

**BACKGROUND**

To say the least, this is a case study in how a struggling restaurant should not treat a hardworking, and loyal, low-level employee. Plaintiff worked as a kitchen hand at Justin's Café in Southeast Washington, D.C., from 2013 to 2018. Compl. ¶¶ 11–12 [Dkt. #1]. Although he customarily worked between 45 and 56 hours per week, he alleges that

he regularly did not receive overtime pay for the time he worked in excess of 40 hours per week. *Id.* ¶¶ 14, 20. He also alleges that in the period immediately before the restaurant abruptly closed on October 24, 2018, he did not receive any pay because his paychecks bounced. *Id.* ¶¶ 10, 24–25.

On January 3, 2019, plaintiff filed a complaint against defendants Justin's Café, LLC; Justin Ross; and Allison Kays seeking damages for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the D.C. Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*; and the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq. See* Compl. ¶ 2. On January 16, 2019, plaintiff voluntarily dismissed the suit as to defendant Justin's Café, LLC, *see* Notice of Voluntary Dismissal [Dkt. #6], and on April 1, 2019, he stipulated to dismissal with prejudice as to defendant Justin Ross, *see* Stipulation of Dismissal [Dkt. #12].

Despite resolution of the case against defendants Justin's Café, LLC and Justin Ross, defendant Allison Kays never appeared in the case. On March 25, 2019, plaintiff requested an entry of default against Kays on the basis that she failed to plead or otherwise defend against the complaint after being properly served on January 19, 2019. *See* Aff. for Default [Dkt. #9]. On March 27, 2019, the Clerk of the Court entered a default against her. *See* Clerk's Entry of Default [Dkt. #10]. Plaintiff moved for default judgment against defendant Kays on February 28, 2020. *See* Mot. for Default J. [Dkt. #14].

## ANALYSIS

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining default judgment. First, when a party has "failed to plead or otherwise defend" against an

2

action, a plaintiff must request that the Clerk of the Court enter a default against that party. Fed. R. Civ. P. 55(a). Second, once the Clerk enters a default, a plaintiff may move for default judgment from the Court. Fed. R. Civ. P. 55(b)(2). Default judgment is appropriate "when the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). "The purpose of default judgments is to prevent absentee defendants from escaping liability by refusing to participate in judicial proceedings." *Amaya v. Logo Enters., LLC*, 251 F. Supp. 3d 196, 199 (D.D.C. 2017).

Default establishes the defaulting defendant's liability for any well-pleaded allegations in the complaint. *See Fanning v. Wellman Dynamics Corp.*, 113 F. Supp. 3d 172, 174 (D.D.C. 2015). It does not, however, establish the amount of damages owed to the plaintiff. *Id.* Unless the amount of damages is certain, a court must "make an independent determination of the sum to be awarded." *Id.* This determination may be based on detailed affidavits or documentary evidence. *See Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002). Although a court "may conduct a hearing to set the amount of damages," it "is not required to do so" as long as there is a basis for the damages specified in the request for default judgment. *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015); *see also Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011).

As an initial matter, the complaint in this case alleges facts sufficient to support liability under both the FLSA and the DCMWA. Both the federal Fair Labor Standards Act and the D.C. Minimum Wage Act require that "employers" compensate their

3

"employees" for hours worked in excess of 40 hours per week at a rate of 1.5 times the employee's standard hourly wage. 29 U.S.C. § 207(a); D.C. Code § 32-1003(c). Plaintiff clearly qualifies as an "employee" under both statutes. *See* Compl. ¶ 11. In addition, the well-pleaded allegations in the complaint establish that defendant Allison Kays qualifies as an "employer" under both laws. *See Boland*, 763 F. Supp. 2d at 67. During plaintiff's time at Justin's Café, defendant Allison Kays was a general manager. *See* Compl. ¶ 8. She set plaintiff's work schedule, signed and distributed his paychecks, and had the power to fire him. *Id.* ¶¶ 31–39. A person "who exercise[d] operational control over an employee's wages, hours, and terms of employment qualifies as an 'employer'" under both the FLSA and the DCMWA. *Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 26 (D.D.C. 2014); *see also Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 152 (D.D.C. 2011).

Plaintiff has also pleaded facts sufficient to establish defendant's liability under both the FLSA and DCMWA. Plaintiff alleged that he worked as a dishwasher and a food preparer at Justin's Café from 2013 to 2018. Compl. ¶¶ 11–13. He was paid by the hour at a rate of $11 per hour when his employment began and $16 per hour when it ended. *Id.* ¶¶ 15–16. He alleged that he customarily worked between 45 and 56 hours per week. *Id.* ¶ 14. However, he regularly did not receive overtime pay for the time he worked in excess of 40 hours per week. *Id.* ¶ 20. From August 19, 2018 until the restaurant was abruptly closed on October 24, 2018, plaintiff alleged that he did not receive his full pay because his paychecks bounced due to insufficient funds in the account. *Id.* ¶¶ 10, 24. During his final two weeks of work, plaintiff alleged that he worked approximately 65 hours but received no paycheck. *Id.* ¶ 25. Because the Clerk of the Court has entered default as to

defendant Allison Kays, these well-pleaded allegations establish defendant Kays is liable under the FLSA and the DCMWA. *See Boland*, 763 F. Supp. 2d at 67.

While the well-pleaded allegations in the complaint establish that defendant Kays is liable, this Court must "make an independent determination" of any damages owed to the plaintiff. *Fanning*, 113 F. Supp. 3d at 174. Under both the FLSA and the DCMWA, if an employee was not paid at least 1.5 times his standard hourly rate for overtime worked, he is entitled to recover his unpaid overtime wages as well as liquidated damages. 29 U.S.C. § 216(b); D.C. Code §§ 32-1012, 32-1303. Here, plaintiff requests $6,249.84 for unpaid overtime wages from December 20, 2015 to June 9, 2018; $6,782.13 for unpaid general wages from August 19, 2018 to October 24, 2018; and $39,095.91 for liquidated damages. *See* Mot. for Default J. at 2–4.

In support of his request for unpaid overtime wages and unpaid general wages, plaintiff has submitted a declaration on his own behalf. *See* Mot. for Default J., Ex. A, Decl. of Santos Martinez Ramos ("Decl.") [Dkt. #14-1]. He attests that from December 20, 2015 to June 9, 2018, he "was paid the same regular hourly rate across all hours worked, including when [he] worked more than forty hours in a week." *Id.* ¶ 9. In support of this statement, he also submitted his pay stubs for all relevant weeks showing how many hours he worked and how he was paid at his standard hourly rate, rather than at 1.5 times his hourly rate, for all overtime hours. *See* Mot. for Default J., Ex. B, Pay Stubs [Dkt. #14-2]. From these records, plaintiff's counsel produced a detailed chart calculating how many overtime hours plaintiff worked each week, what his standard hourly rate was that week,

and therefore how much he is owed in unpaid wages for each week. *See* Mot. for Default J., Ex. C, Damage Calculations from Dec. 20, 2015 through Sep. 8, 2018 [Dkt. #14-3].

Plaintiff also attests that from August 19, 2018 to October 24, 2018, he "was paid nothing." Decl. ¶ 11. He explains that for the first three of five total pay periods missed, he deposited the paychecks he received, but each was rejected for insufficient funds. *Id.* ¶ 12; *see also* Mot. for Default J., Ex. D, Checks Returned as Unpaid [Dkt. #14-4]. When he attempted to deposit a paycheck for the fourth pay period, the bank teller was aware of the prior paychecks having bounced and thus refused to accept that paycheck. Decl. ¶ 13. And for the fifth pay period, plaintiff did not receive a paycheck at all! *Id.* ¶ 14. As such, I easily find that plaintiff's declaration, corroborated by voluminous pay stub records and copies of bounced paychecks, more than suffices to establish that plaintiff's requests for damages of $6,249.84 for overtime wages and $6,782.13 for unpaid wages are appropriate. *See Flynn*, 237 F. Supp. 2d at 69, 71.

Next, I must determine the appropriate amount of liquidated damages to award. Under the FLSA, defendant Kays is liable "in the amount of [plaintiff's] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But under both the DCMWA and the DCWPCL, defendant Kays is liable for liquidated damages in an amount equal to *treble* the amount of unpaid wages. D.C. Code §§ 32-1012(b)(1), 32-1303(4); *see Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 122–23 (D.D.C. 2016). Because D.C. law is more generous in terms of liquidated damages, and because employees are entitled to the higher of the amount of liquidated damages set by state law or by the FLSA, *see* 29 C.F.R. § 778.5, I must assess liquidated damages under

6

D.C. law. *See Ventura*, 134 F. Supp. 3d at 104. Plaintiff correctly asserts that he is entitled to liquidated damages unless "the employer shows to the satisfaction of the court that the act or omission giving rise to [the complaint] was in good faith and that he had reasonable grounds to believe that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. As defendant Kays has not appeared in this case, much less attempted to offer any evidence of good faith, plaintiff is also clearly entitled to treble damages in the amount of $39,095.91.

Finally, plaintiff has also requested attorney's fees and costs. The FLSA and the DCMWA *require* an award of reasonable attorney's fees and costs to employees whose rights are violated under those statutes. 29 U.S.C. § 216(b); D.C. Code §§ 32-1012(a), 32-1308(b). A plaintiff who obtains a default judgment against a defendant qualifies as a prevailing party entitled to attorney's fees. *See Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 194 (D.D.C. 2016); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The proper amount of attorney's fees is calculated "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). As such, I must evaluate the attorneys' hourly rates and the amount of time expended to determine whether they are reasonable.

Attorneys' rates are reasonable if they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (quoting *Blum*, 465 U.S. at 896 n.11). Our Circuit's law allows that attorney's fees be calculated pursuant to the *Laffey* matrix employed in *Salazar v. District of Columbia*, 123 F. Supp. 2d

7

8 (D.D.C. 2000). *See Covington*, 57 F.3d at 1109. In support of plaintiff's request for attorney's fees, plaintiff's counsel prepared an affidavit as well as an invoice of attorney's fees based on rates established by the *Laffey* matrix. *See* Mot. for Default J., Ex. F, Aff. of Att'y's Fees & Costs [Dkt. #14-6]. According to this affidavit, attorney Justin Zelikovitz billed at a rate of $747 per hour, *id.* ¶ 4, attorney Jonathan Tucker billed at a rate of $661 per hour, *id.* ¶ 5, and paralegals Nicolas Wulff and Julia Gutierrez billed at a rate of $203 per hour, *id.* ¶ 6. Upon review of plaintiff's counsel's affidavit as well as the updated *Laffey* matrix, I conclude that these rates were indeed reasonable.

Next I must consider whether the amount of time these attorneys expended was reasonable. Plaintiff's invoice shows that attorney Zelikovitz billed 0.8 hours on this case reviewing the case file and filing the complaint; attorney Tucker billed 8.9 hours conducting the initial intake meeting, researching and drafting the complaint, creating exhibits, and drafting the motion for default judgment; and paralegals Wulff and Gutierrez billed 7.4 hours organizing documents, preparing damages calculations, and preparing affidavits. *See* Aff. of Att'y's Fees & Costs at 3–4. This invoice was based on the firm's contemporaneous time records. *Id.* ¶ 2. Plaintiff's attorney's fees request excludes time spent on litigation solely directed toward defendants Justin Ross and Justin's Café. *See* Mot. for Default J. at 5. Plaintiff's counsel's affidavit and the attached invoice provide sufficient detail to enable the Court to "make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam). Having independently reviewed plaintiff's counsel's claimed hours, I find that none of these tasks were "duplicative, excessive, or

otherwise unnecessary." *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 34 (D.D.C. 2010). Accordingly, I find that plaintiff's request for attorney's fees totaling $7,913.00 is reasonable.

As for costs, plaintiff's counsel requests that the Court reimburse his firm for litigation costs including the court's filing fee of $400.00 and two $60.00 fees for serving the complaint on Kays. *See* Aff. of Att'y's Fees & Costs at 4. These costs, totaling $520.00, are the type of costs typically found to be reasonable and compensable. *See, e.g., Serrano*, 209 F. Supp. 3d at 198; *Ventura*, 738 F. Supp. 2d at 33–34. Accordingly, I also find that plaintiff's request for costs totaling $520.00 is appropriate.

## CONCLUSION

For all of the foregoing reasons, plaintiff's Motion for Default Judgment [Dkt. #14] is GRANTED. The Clerk of the Court is directed in the attached order to enter judgment against Allison Kays in the amount of $60,560.88, consisting of $6,249.84 in overtime wages, $6,782.13 in unpaid wages, $39,095.91 in liquidated damages, $7,913.00 in attorney's fees, and $520.00 in costs.

RICHARD J. LEON
United States District Judge